Brady, J.
—The question presented to the jury herein was whether the sum of $24,500 had been obtained from *556 plaintiffs, who are brokers, by fraudulent representations. They had been, for a long, time, in the habit of taking the defendant’s paper and advancing upon it in anticipation of its sale, and had allowed an amount of credit to them not less, at any time, it would appear, than $35,000. On the 20th November, 1885, they allege that the defendant Watson applied for $10,000 in addition to sums already advanced and that a further sum of $14,500 was applied for and advanced, not upon the strength of prior dealings and relations, but upon statements made by Watson on the day named and which, if made, were false.
The defendant Watson flatly denied the charge made, and the junior plaintiff was assailed in the statement he made, and which had an important bearing upon the question at issue.
There were, indeed, circumstances springing from the plaintiffs’ case which militated against the truthfulness of the charge made indicating, among other incidents, as they did, that- kindred representations, if made at all, were made at a prior period and too remote to have induced any reliance upon them at the date mentioned.
The case also presents this curious feature, namely, that the $10,000 obtained went back to the plaintiffs by its application to the payment of paper held by them.
It is true this does not pay the loan which is still a debt due, but it is a strong circumstance to disprove any fraudulent intent. It was not borrowing from Peter to pay Paul, but from Peter to pay him and thus sustain a credit which was imperiled, but might be nursed and saved.
It is true that fraudulent representations cannot be resorted to even for this purpose, but the disposition of the money obtained has an important bearing upon the good faith of the borrower. . These circumstances are set down to characterize, as they do, a close case, and one on which every legal attribute should be evoked to the ends of justice, and no evidence offered within its rule, liberally expressed should have been rejected. It appears that the plaintiff Hiram 0. Bennett had a conversation with Mr. Stewart about the debt in controversy, and, on cross-examination, he was asked to state the conversation, ,the design being to show statements by him in conflict with those charging the use of fraudulent representations, and, on objection the inquiry was excluded. This was error. No plaintiff should be allowed to withhold any evidence legitimately bearing upon the issue involved, and the defendant should not be compelled, except in extreme cases, to state the particular object in view by a question asked of his adversary.
*557 Non constat but that if the conversation had been given the witness would have shown that he had in fact made such a contradictory declaration or would have placed himself in an assailable position by his account of the interview. The rule as to the examination of parties must be broader than that which controls witnesses who have no interest in the controversy, and therefore no disposition to suppress the whole proof which they may be able to make.
The rule to be observed should be conducive to a full and fair development of the relations between the parties, and nothing repressed which tends legitimately to that end. The objection to such a revelation might well indeed be regarded as suspicious. The charge of fraud is not infrequently resorted to as a means of driving the debtor to the wall, and is often an afterthought, as judicial observation has demonstrated, although there are numerous cases, of which this may be one, where the accusation is just. When it is made and denied the door should be thrown open wide, so far as the parties are concerned when on cross-examinatian at least, in order that the truth of the accusation may be ascertained. This should be so, particularly as the charge involves personal liberty as well as character.
But aside from this the learned judge in charging the jury said; The result to Mr. Watson of a verdict sustaining the contention of the plaintiffs would certainly fix upon him the charge of having made false and fraudulent representations, but also the plaintiffs have lost their means, and allege it to have happened through such representations. If they are unsuccessful in this case, they may ultimately lose the whole of the sum at issue which they claim for damages. So you see the moment a jury invade the domain of sympathy, there are considerations which may arise upon both sides of a law suit. The proper legal way to dispose of an issue of fact is upon your clear and unbiased judgment of the truth in the case, which judgment should be reached upon a consideration of the facts and circumstances presented relating to the transaction.
And exception was duly taken to the suggestion that if the plaintiffs were unsuccessful they might ultimately lose the whole sum which they claimed as damages. The exception was well taken. The issue was whether a fraud had been perpetrated, and it was the only issue.
The plaintiffs, if the fraud were committed, were entitled to a verdict absolutely without regard to any other consideration, and the defendants were equally entitled to a verdict in their favor if the fraud were not proved, and that, too, whether in consequence the plaintiffs lost their claim or collected it.
The issue presented an abstract question of fact, and its *558 determination could not be mingled with ultimate results-either the one way or the other.
For these reasons a new trial should be ordered, with costs to appellants to abide the event.
Daniels, J., agrees as to the result; Van Brunt, P. J., concurs.